**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEORGE W. BILLINGS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-3487 |
| v. | : | **OPINION** |
| AMERICAN EXPRESS COMPANY, | : | |
| Defendant. | : | |

**RODRIGUEZ**, Senior District Judge

This matter comes before the Court on Defendant American Express Travel Related Services Company's ("AMEX") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. At issue is whether pro se Plaintiff George Billings states claims entitling him to relief based on AMEX's failure to authorize an attempted charge to Billings' credit card account due to a purported late payment that Billings contends he made on time. For the reasons stated below, Defendant's motion will be granted.

**Factual Background**

This action arises out of Plaintiff's attempt to use his American Express credit card to make a purchase which AMEX's computerized system declined. On the date in question, Plaintiff had two credit accounts with AMEX: a Business Capital Line account, which extended Plaintiff a line of credit ("Credit Line Account"), and an American Express Credit Card account ("Credit Card Account"). Each Account was governed by its own written agreement ("Credit Line Agreement" and "Credit Card Agreement,"

1

respectively). On April 6, 2009, at approximately 2:46 p.m., Plaintiff sought to make a purchase at a retail location in Lindenwold, New Jersey. Plaintiff attempted to use his American Express card to make the purchase, but his card was declined because AMEX had suspended his charging privileges. Later that afternoon, beginning at approximately 4:16 p.m., Plaintiff placed numerous phone calls to AMEX and spoke with two different customer service representatives. The representatives each informed Plaintiff that his charging privileges had been suspended because a $184.00 payment that was due on Plaintiff's Credit Line Account by 12:00 noon on April 4, 2009 had not been received. Plaintiff contended that he made the payment that was due; however, the representatives with whom Plaintiff spoke repeatedly stated that the payment had not been received.

When speaking to a representative identified as "Dave," Plaintiff requested to speak to a supervisor or person of authority. According to Plaintiff, however, "Dave" did not connect Plaintiff with a supervisor and terminated the call "abruptly and without notice." Plaintiff then called again and spoke to a representative identified as "Joseph," who, after repeated requests by Plaintiff, eventually connected Plaintiff with a supervisor. Finally, after Plaintiff spoke to a supervisor at approximately 4:41 p.m., the payment was located within AMEX's system and credited to Plaintiff's account. Plaintiff's charging privileges were then restored.

According to Plaintiff, he made a payment in the amount of $284.00 on April 4, 2009, which was a Saturday, by using his bank's (TD Bank) online bill paying system. Upon further investigation, Plaintiff discovered that TD Bank uses a third-party, Online Resources, to process and tender payment on behalf of TD Bank's customers. According

to documentation in the record, Online Resources transmitted Plaintiff's payment, along with other customers' payments in a single batch, to AMEX on Monday, April 6, 2009. Electronic records maintained by AMEX indicate that the payment was received at 4:12 p.m. on April 6, 2009.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## Procedural History

Plaintiff, proceeding pro se,  filed the Complaint in this action in the Superior Court of New Jersey Law Division in Camden County on June 3, 2010. Defendant removed the case to this Court on July 8, 2010. On July 15, 2010, Plaintiff filed a motion to remand [Docket # 5.], which was withdrawn on July 21, 2010. [Docket # 6.] On August 13, 2010, Plaintiff filed a motion for summary judgment [Docket # 8.], which he then terminated on September 1, 2010. [Docket # 11.] Defendants filed the present motion to dismiss/motion for summary judgment on May 7, 2011.

## Discussion

Plaintiff's Complaint alleges breach of contract (Count One), negligence (Count Two), and common law and consumer fraud (Count Three). Plaintiff alleges that as a result of AMEX's breach of contract, negligence, and fraud, he has suffered mental anguish and emotional distress, and had to seek psychiatric treatment and drug therapy. Plaintiff has indicated that his damages are, at minimum, $350,000, and upwards to $700,000. AMEX, in support of its motion, contends that the evidence in the record demonstrates that Plaintiff's payment was not sent to and received by AMEX until April 6, 2009, and that AMEX suspended Plaintiff's charging privileges in accordance with the

terms of the Credit Line and Credit Card Agreements. AMEX therefore argues that (1) AMEX did not breach its Agreements with Plaintiff, (2) Plaintiff's tort claims fail under the economic loss doctrine and (3) Plaintiff fails to state a claim for fraud. Accordingly, AMEX seeks dismissal under Rule 12(b)(6) or, in the alternative, summary judgment under Rule 56.

## I. Standard of Review Under 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with'

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 129 S. Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Id.

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable

inferences drawn from those facts in the light most favorable to the nonmoving party.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a
genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once
the moving party has met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine issue for trial. Id.;
Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to
withstand a properly supported motion for summary judgment, the nonmoving party
must identify specific facts and affirmative evidence that contradict those offered by the
moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon
mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v.
Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting
Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment,
> after adequate time for discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof at
> trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot
be genuinely disputed by showing that "an adverse party cannot produce admissible
evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord
Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role

7

is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Analysis

### A. Breach of Contract

Plaintiff has not pled sufficient facts which, taken as true, state a claim for breach of contract which is plausible on its face under applicable law. Moreover, viewing the facts in the record in a light most favorable to Plaintiff, there is no genuine issue of material fact as to whether AMEX breached the contracts.

First, Plaintiff fails to state a claim for breach of contract under the governing law. Both the Credit Line Agreement and the Credit Card Agreement contain "Applicable Law" provisions which designate the law of the State of Utah as the governing law for interpretation of the Agreements. New Jersey courts generally will uphold a contractual choice of law provision if it does not violate New Jersey's public policy. N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Systems, Inc., 730 A.2d 843, 847 (N.J. 1999). The Court therefore will apply Utah law to Plaintiff's breach of contract claim.

Under Utah law, the elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. Bair v. Axiom Design, L.L.C., 20 P.3d 388, 392 (Utah 2001). In his Complaint, Plaintiff alleges that AMEX breached the credit card agreement by "refusing to accept a legal charge placed by Plaintiff on [his] credit card account."

Compl. at ¶ 75. Plaintiff contends, and AMEX agrees, that contracts existed between the parties with respect to Plaintiff's credit accounts with AMEX. However, Plaintiff has not pled sufficient facts to support the second and fourth required elements; i.e., Plaintiff does not establish that he performed his own contractual obligations and fails to allege actionable damages under Utah law.

Under the terms of the Credit Card Agreement, AMEX may consider a breach of an obligation under any other agreement between AMEX and Plaintiff as a default with respect to the Credit Card Account. Def.'s Br., Decl. of Edmond Garabedian ("Garabedian Decl."), Ex. "A" at 2-3.[3] Upon default, AMEX may suspend or cancel Plaintiff's Credit Card Account. Id. at 3. Plaintiff states that he received a billing statement in connection with his Credit Line Account with a payment due date of April 4, 2009. Compl. at ¶ 45. The billing statement, which Plaintiff attached to his Complaint, stated that "Payments received after 12:00 noon may not be credited until the next day." Compl. at ¶ 46; Ex. "B." The Credit Line Agreement, also attached to the Complaint, provides that payments that AMEX receives "no later than the hour specified on [the] billing statement will be credited to [the] account as of the day received," while payments received after such time will be credited the following day. Compl., Ex. "D" at 1. Thus, under the expressed terms of the Agreements, Plaintiff had a contractual obligation to pay the amount owed by 12:00 noon on April 4, 2009.

---

[3] Plaintiff did not attach a copy of the Credit Card Agreement to his Complaint. However, as Plaintiff alleges a breach of the Agreement, it is "a document integral to or explicitly relied upon in the complaint [and] may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, 281 F.3d at 388, supra, n. 1.

Though Plaintiff alleges that he electronically transferred payment via TD Bank on April 4, 2009 (Compl. at ¶ 47), he does not allege the time payment was made. In other words, Plaintiff fails to allege that he made a payment receivable by AMEX "no later than the hour specified on [the] billing statement," and thereby made payment when due. Thus, Plaintiff fails to allege that he performed his own contractual obligations. As such, Plaintiff's Complaint does not state necessary facts to support a claim for breach of contract. See e.g., Frederico v. Home Depot, 507 F.3d 188, 204 (3d Cir. 2007) (applying New Jersey law and affirming dismissal of plaintiff's breach of contract claim where plaintiff failed to plead the time—rather than merely the day—of her attempted return of a rental vehicle where the rental agreement stipulated the time the vehicle was to be returned).[4]

In addition, Plaintiff fails to allege adequate damages as is required to state a prima facie case for breach of contract under Utah law. Plaintiff alleges that AMEX's breach of contract caused him to suffer mental anguish, emotional distress, and loss of

---

[4] In his Opposition, Plaintiff argues that AMEX's 12:00 noon payment deadline violated the Truth In Lending Act. Specifically, Plaintiff points to the reasonable requirements for payments provisions contained in 12 C.F.R. § 226.10 (2011), which provide that creditors may set reasonable cut-off times for payments to be received by mail, electronic means or telephone, "provided that such cut-off times shall be no earlier than 5 p.m. on the payment due date." 12 C.F.R. § 226.10(b)(2)(ii). However, this cut-off time provision was added on February 22, 2010 along with amendments made in accordance with the Credit Card Accountability Responsibility and Disclosure Act of 2009 and did not apply at the time here at issue. See Truth in Lending, 75 Fed. Reg. 7925, 7925 (February 22, 2010) (to be codified at 12 C.F.R. pt. 226); Accord Truth in Lending, 74 Fed. Reg. 5244, 5357 (January 29, 2009) (to be codified at 12 C.F.R. pt. 226) (withdrawn and superceded by Truth in Lending, 75 Fed. Reg. at 7925, supra.) ("The Board intends for this rule to apply only prospectively, and believes that providing a safe harbor rather than defining certain cut-off times as unreasonable reinforces the fact that the rule does not apply to past practices").

enjoyment of life. Compl. at ¶¶ 78-80. As a result, he had to obtain "ongoing professional treatment" and prescribed drug therapy. Id. at ¶¶ 81-82. Plaintiff does not allege any other damages resulting from AMEX's alleged breach. Such damages are not recoverable in a breach of contract action and Plaintiff therefore fails to state a claim for damages entitling him to relief.

The Supreme Court of Utah has addressed the issue of whether damages for emotional distress may be recovered in an action for breach of contract and determined that emotional distress is typically not recoverable because such damages are rarely a foreseeable result of breach. Cabaness v. Thomas, 232 P.3d 486, 508 (Utah 2010). "To be sure, 'in the ordinary commercial contract, damages are not recoverable for disappointment, even amounting to alleged anguish, because of breach.'" Id. (internal citation omitted). However, the Court held that "a non-breaching party may recover general and/or consequential damages related to emotional distress or mental anguish arising from a breach of contract when such damages were both a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties at the time the contract was entered into." Id. (emphasis in original).

Here, Plaintiff cannot maintain a cause of action for his alleged consequential damages resulting from AMEX's alleged breach. Notwithstanding the fact that Plaintiff has not alleged that he performed his contractual obligations and is therefore a non-breaching party, Plaintiff's claimed mental anguish and emotional distress cannot be said to be foreseeable results of the alleged breach, nor explicitly within the contemplation of the parties at the time the contracts were entered into. Plaintiff's damages are therefore not recoverable under Utah law. Plaintiff has alleged, but not

11

shown, that he is entitled to relief.

Even if Plaintiff's pleadings were sufficient, however, the facts viewed in a light most favorable to him do not present a genuine issue of material fact as to his breach of contract claim. The parties do not dispute that at some time on April 4, 2009, a Saturday, Plaintiff authorized payment to AMEX through TD Bank, which in turn used a third party, Online Resources, to transmit payments to TD Bank's customers' creditors. Plaintiff contends that the payment was made available to AMEX on that date, but that AMEX failed to attempt to retrieve it on that date. Pl.'s Br. at ¶ 11. However, documents produced by Plaintiff and AMEX indicate otherwise.

Plaintiff obtained and subsequently provided documentation from TD Bank with respect to his electronic payment to AMEX. In a September 10, 2010, letter, TD Bank provided records which indicate that Plaintiff's payment of $284.00 was made through TD Bank's Bill Pay on April 4, 2009; however, the records also indicate that the payment file—containing Plaintiff's payment and those of other customers—was sent to AMEX on April 6, 2009. Def.'s Br., Decl. of William H. Grae ("Grae Decl."), Ex. "G;" Pl.'s Br., Ex. "D." In addition, electronic records maintained by AMEX indicate that the payment was not received by AMEX until April 6, 2009 at 4:12 p.m., after the time that Plaintiff attempted his purchase. Garabedian Decl., Ex. "H."[5] Based on the terms of the Agreements, Plaintiff defaulted by virtue of the late payment and AMEX was within its rights to suspend his account.

Moreover, under the express terms of the Credit Card Agreement, AMEX

---

[5] The final line of the attached document indicates a date and time listed as "0406091612," or, 04/06/09 16:12, and indicates "PT" and an amount of $284.

reserved the right to decline any attempted purchase and evaluated attempted purchases based on several factors. The Credit Card Agreement provides:

> Each Charge is evaluated in light of your spending and payment patterns on your Account and other accounts you may have with us and our affiliates, your credit history, including experience with other creditors, and your personal resources known to us. We reserve the right to deny any request for authorization for a Charge.

Garabedian Decl., Ex. "A" at 1. In addition, AMEX reserved the right to suspend Plaintiff's account at any time and for any reason, regardless of whether or not Plaintiff was in default:

> In addition to any other actions we may take under this Agreement, we may suspend or cancel your Account, any Feature, or any component of your Account, and/or we may suspend or cancel the authorization of any Additional Cardmember to make Charges to your Account, at our sole discretion at any time, with or without cause, whether or not your Account is in default, and without giving you notice, subject to applicable law.

Id. at 2. In short, even if Plaintiff did not default by making the late payment, AMEX could not have breached the Credit Card Agreement by suspending Plaintiff's account because it reserved the right to do so under the expressed terms of the contract.

As noted above, according to the terms of the Agreements, payments are to be credited in accordance with when they are *received*. Even though Plaintiff attempted to send his payment on the due date by using his bank's online bill pay feature, whatever his efforts, they were not sufficient to meet his obligations under the Agreements. The

13

record evidence demonstrates that Plaintiff's payment was neither sent to nor received by AMEX when due. This constituted a default, thereby triggering AMEX's right to suspend Plaintiff's account. Even viewing the facts in a light most favorable to Plaintiff, no genuine issue of material fact exists because a jury acting reasonably could not find for Plaintiff based on the evidence. Moreover, Plaintiff has not met his burden to identify specific facts and affirmative evidence that contradict those offered by AMEX. Accordingly, AMEX's motion will be granted as to Plaintiff's breach of contract claim.

B. Negligence

In Count Two, Plaintiff alleges that AMEX "negligently perpetrated an adverse action" against him "despite being aware that [he] was not past due on any payment due" to AMEX. Compl. at ¶ 88. Plaintiff further alleges that two of AMEX's customer service representatives "acted negligently" by denying that his Credit Line Account was paid, failing to investigate the status of his Credit Line Account, and by hanging up on him. Compl. at ¶¶ 111-113. Plaintiff claims that these actions caused him to suffer mental anguish and emotional distress. AMEX argues that Plaintiff's tort claims are barred by the economic loss doctrine. The Court agrees.

Under New Jersey law, "the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002). A tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002). "[M]ere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair

dealing, is not actionable in tort." <u>Rivera v. Washington</u>, 637 F. Supp. 2d 256, 269 (D.N.J. 2009). "Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." <u>Saltiel</u>, 788 A.2d at 276 (internal quotations and citations omitted).

Here, Plaintiff's allegations in support of his negligence claim arise out of the contractual agreements between Plaintiff and AMEX. In essence, Plaintiff argues that AMEX "negligently" failed to acknowledge or credit his payment and thus "negligently perpetrated an adverse action" against him. Plaintiff does not identify any duty that AMEX breached that is independent of the contractual relationship. The issue as to whether or not AMEX failed to credit a payment made to Plaintiff's account presents a question as to AMEX's performance under the Agreements and implicates only contractual duties. In addition, while the representative's hanging up on Plaintiff might have been rude, it did not implicate any independent and legally cognizable duty. Thus, Plaintiff's negligence claim does not give rise to an independent tort for which relief can be granted. Therefore, AMEX's motion to dismiss will be granted as to Plaintiff's negligence claims.

### C. Consumer Fraud and Fraud

Plaintiff also fails to state claims under the New Jersey Consumer Fraud Act, N.J.S.A. 52:8-1, et. seq., and for common law fraud. In Count Three of Plaintiff's Complaint, Plaintiff alleges that AMEX violated the Consumer Fraud Act, N.J.S.A. 52:8-2, when it committed an unconscionable commercial practice by "suppressing a legal charge placed by Plaintiff" on his credit card "which act caused a merchant to rely on

that suppression." Compl. at ¶ 126. Plaintiff further alleges unconscionable commercial practices in AMEX's "misrepresentation, concealment and false pretense" regarding the status of his Credit Line Account in his telephone conversations with the customer service representatives. Id. at ¶¶ 128, 132, 134, 136, 137. Finally, Plaintiff alleges that AMEX committed fraud by collecting an annual membership fee for his Credit Line Account in May of 2008 and subsequently canceling the account in January 2009. Id. at ¶¶ 140-143. Plaintiff has not pled allegations sufficient to sustain his New Jersey Consumer Fraud Claim and fails to state a claim for common law fraud.

### 1. Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA") provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. 52:8-2. The CFA is applicable to the provision of consumer credit and related subsequent performance. Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1115-16 (N.J. 2011) (citing Lemelledo v. Beneficial Management Corp. of America, 696 A.2d 546, 551 (N.J. 1997). A simple breach of contract, however, is not per se unconscionable and alone does not violate the Act. Gennari v. Weichert Co. Realtors, 672 A.2d 1190, 1205

16

(N.J. Super. Ct. App. Div. 1996). Moreover, mere customer dissatisfaction does not constitute consumer fraud. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998).

To state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009). As to the first element, New Jersey courts have held that "unlawful conduct can consist of (1) an affirmative misrepresentation, even if not made with knowledge of its falsity or with an intent to deceive; (2) the knowing omission or concealment of a material fact, accompanied by an intent that others rely upon the omission or concealment; or (3) a violation of a specific regulation promulgated under the CFA. Gupta v. Asha Enterprises, L.L.C., 27 A.3d 953, 959 (N.J. Super. Ct. App. Div. 2011) (internal quotations and citations omitted). In cases of an alleged misrepresentation, "not just any erroneous statement will constitute a misrepresentation prohibited" under the CFA; rather, "[t]he misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997) (internal quotations and citation omitted).

In addition, "adequately alleging an ascertainable loss is a prerequisite for maintenance of a private action to remedy a violation of the CFA." Gupta, 27 A.3d at 960. Non-economic damages are not recoverable under the Act. Gennari, 691 A.2d at 368-69. Damages for emotional distress constitute non-economic losses that are not recoverable under the CFA. Cole v. Laughrey Funeral Home, 869 A.2d 457, 463 (N.J.

Super. Ct. App. Div. 2005).

Here, Plaintiff's pleadings fail to allege the elements required to state a claim under the CFA. Plaintiff alleges that AMEX, through its customer service representatives, misrepresented the status of his Credit Line Account on April 6, 2009. Even assuming, solely for the purposes of a motion to dismiss, that AMEX's statements regarding the Account were false, Plaintiff does not allege that the statements induced him in any way. Importantly, the alleged misrepresentations were made after the Agreements between Plaintiff and AMEX were already entered into and therefore not at a time when they may have induced Plaintiff's entering into the Agreements. See Cole, 869 A.2d at 462-63 (alleged misrepresentations made after the contract was entered into were not made to induce the buyer). As such, these alleged misrepresentations do not amount to unlawful conduct for the purposes of the CFA and are not sufficient to state a CFA claim.

In addition, Plaintiff's allegation regarding the "suppression" of his attempted purchase simply repeats his breach of contract claim. As noted above, a breach of a contract does not alone violate the CFA and Plaintiff's allegation does not state a CFA claim by way of Plaintiff's addition of a legal conclusion that such conduct was "unconscionable" within the meaning of the Act.

Moreover, no matter the nature of Plaintiff's alleged unlawful conduct by AMEX, Plaintiff fails to allege an ascertainable loss as required for a CFA claim. As with Plaintiff's breach of contract and negligence claims, the only damages that Plaintiff seeks as a result of AMEX's alleged fraud are for psychiatric therapy and prescription medication for the treatment of Plaintiff's alleged emotional distress. Such damages do

18

not constitute economic losses for purposes of the CFA. See Cole, 869 A.2d at 463; See also, Gupta, 27 A.3d at 960. In Gupta, plaintiffs alleged damages for the cost of a trip to India in order to undergo a purification ritual to cure an alleged spiritual injury which "cannot be categorized as either a loss of moneys or property." Id. The Appellate Division held that the underlying harm–the spiritual injury–could not be an ascertainable loss and declined to expand the definition of ascertainable loss to cover such injuries. Id. (citing Gennari, 691 A.2d at 368-69; Cole, 869 A.2d at 463). Similarly here, the only damages claimed in Plaintiff's Complaint are consequential damages arising out of alleged emotional distress and mental anguish. Such underlying injuries are non-economic losses not recoverable under the CFA. As such, Plaintiff's alleged damages do not constitute ascertainable loss and fail to satisfy the pleading requirements for a claim under the CFA. Accordingly, AMEX's motion to dismiss the consumer fraud claim will be granted.

### 2. Common Law Fraud

Finally, Plaintiff alleges that AMEX committed "constructive fraud" by collecting an annual fee from him in May of 2008 and then canceling his Credit Line Account in January of 2009, less than a full year after he paid the annual fee. More specifically, Plaintiff alleges that he "suffered constructive fraud by not receiving his quid pro quo that was a material part of the fee" charged by AMEX. Compl. at ¶ 143. In other words, Plaintiff alleges that he did not receive the full year's use of the Credit Line Agreement for which he paid. Pl.'s Br. at 14. In essence, then, Plaintiff alleges that he did not receive

the benefit of the bargain, which is a claim not for fraud, but for breach of contract.[6]

In order to state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). The misrepresentation must be as to a presently existing or past fact; thus, "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J. 1998). "A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the non-performance of that promise does not make it so." Barry by Ross v. New Jersey State Highway Authority, 585 A.2d 420, 424 (N.J. Super. Ct. Ch. Div. 1990). Promises made

---

[6] Indeed, Plaintiff uses similar language when alleging breach of contract in Count One of his Complaint: "Plaintiff did not receive his quid pro quo that was a material part of the contract between Defendant and Plaintiff." Compl. at ¶ 83. Moreover, Plaintiff's labeling of his fraud claim as "constructive" fraud does not illuminate or ground his claim. As New Jersey courts have observed, "'constructive fraud is not fraud at all but is descriptive of conduct which may in the eyes of the law give rise to certain consequences [e]nsuing upon actual fraud.'" Foont-Freedenfeld Corp. v. Electro-Protective Corp., 314 A.2d 69, 70 (N.J. Super. Ct. App. Div. 1973) (citing Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 155 A.2d 536, 542 (N.J. 1959). Such conduct "is made to sound like fraud by putting the word 'constructive' in front of it." In re Bowen, 151 F.2d 690, 691 -692 (3d Cir. 1945). No matter the label, however, Plaintiff essentially alleges non-performance of AMEX's duties in that he did not receive his bargained-for exchange. Thus, Plaintiff's allegations of fraudulent conduct are "not made any clearer by calling failure to perform . . . constructive fraud when it has nothing to do with fraud at all." Id. In any event, for the reasons now discussed, Plaintiff's allegations speak to conduct that does not give rise to liability.

without the intention to perform are material misrepresentations for purposes of alleging fraud in as much as they are misrepresentations of the promisor's state of mind. Bell Atlantic Network Services, Inc. v. P.M. Video Corp., 730 A.2d 406, 417 (N.J. Super. Ct. App. Div. 1999). However, "[t]he intention of the promisor not to perform is not sufficiently established by mere proof of nonperformance." Ocean Cape Hotel Corp. v. Masefield Corp., 164 A.2d 607, 614 (N.J. Super. Ct. App. Div. 1960).

Here, Plaintiff has not alleged that AMEX made a misrepresentation that it knew to be false and upon which Plaintiff relied. In addition, Plaintiff has not alleged that AMEX made any promise or promises without the intention to perform. Rather, Plaintiff argues in his Opposition only that AMEX "acted unjustly and extremely one-sided when [it] collected a fee for a Line of Credit that [AMEX] was unwilling to maintain." Pl.'s Br. at ¶ 47. This contention is insufficient to salvage the pleading deficiencies in Plaintiff's Complaint. AMEX's subsequent decision not to maintain the Credit Line Account does not alone show that it did not intend to maintain the Account at the time it collected the fee—even assuming that AMEX promised to do so, which Plaintiff also has not claimed. As such, Plaintiff has not alleged a misrepresentation or conduct that constitutes a misrepresentation as is required to state a claim for fraud.

Plaintiff essentially alleges that AMEX failed to perform its obligations under the Credit Line Agreement by terminating his Account seven months after Plaintiff paid the annual fee. Such nonperformance does not state a claim for fraud. See Barry by Ross, 585 A.2d at 424; See also, Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 164 A.2d 785, 789 (N.J. Super. App. Div. 1960) ("A mere promise to do something in the future, subsequently unfulfilled, does not constitute actionable fraud . . . . It is a mere

breach of contract for which an action for money damages may lie"). Moreover, as AMEX argues, the conduct that Plaintiff alleges constituted fraud–but that more properly states a claim for breach of contract–is expressly provided for in the Credit Line Agreement. That Agreement provides:

> Suspension/Cancellation
>
> In addition to any other actions we may take under this Agreement, we may suspend or cancel your Account privileges or any feature offered in connection with your Account, we may reduce your credit line or cash advance limit (including to a level below your outstanding balance), at our sole discretion at any time, with or without cause, whether or not your Account is in default, and without giving you notice, subject to applicable law.

Compl., Ex. "D" at 2. Thus, the expressed terms of the Agreement, binding on both Plaintiff and AMEX, granted AMEX the right to take precisely the action Plaintiff now seeks to challenge as fraudulent.

Plaintiff fails to allege any misrepresentation of a then-existing or past fact made by AMEX at the time he entered into or renewed the Credit Line Agreement. Moreover, Plaintiff has not alleged that AMEX made a false promise or that it ever promised not to terminate his Credit Line Account in exchange for the annual fee. Instead, Plaintiff alleges that he did not receive what he paid for under the Agreement because AMEX did not maintain his Account for a full year. Because such claims of non-performance do not constitute fraud, Plaintiff's common law fraud claim will be dismissed.

## <u>Conclusion</u>

For the reasons stated above, AMEX's motion to dismiss will be granted. The appropriate orders shall issue.

Dated: November 16, 2011

__/s/Joseph H. Rodriguez_____

Hon. Joseph H. Rodriguez,

United States District Judge
